IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SCIENCES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-304 |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |

# **DEFENDANT'S MOTION TO DISMISS**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

GREGG M. SCHWIND
AMANDA L. TANTUM
Trial Attorneys
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington D.C. 20530
Tel: (202) 353-2345

July 23, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES……………………………………………………………2

STATEMENT OF FACTS……………………..……………………………………………2

ARGUMENT ……………………………………………………………………..………4

I. Standard Of Review……………………………..…………….….…….……4

A. Standard For Motion To Dismiss Under RCFC 12(b)(1)………………....4

B. Standard For Motion To Dismiss Under RCFC 12(b)(6)………………....5

II. The Court Lacks Jurisdiction To Consider Count I Because The FAR Provisions Allegedly Violated Are Not Mandatory ……………………….…...…6

III. Section 1491(b)(1) Superseded The Theory Of An "Implied-In-Fact Contract" In The Procurement Process ………………………….....……....…13

IV. ISC Has Also Failed To State A Claim On Which Relief May Be Granted……………………………..…………….….……….……..………....15

A. ISC Grounds Its Claims On Unsupported Allegations Of Bad Faith And Fraud On The Part Of GSA………………...…………………….…15

B. ISC Has Failed To Properly Plead Its Implied-In-Fact Contract Claim……………………………………………………………..…16

V. ISC's Claim For Fees Under The Equal Access to Justice Act ("EAJA") Is Premature And Should Be Dismissed………………………….....…...…....…17

VI. ISC's Claim For "Other Monetary Relief" Is Barred By The Tucker Act And Should Be Dismissed ……………………………….….……..………....18

CONCLUSION……………………………………………………………..………19

## TABLE OF AUTHORITIES

### CASES

Abraham v. United States,
81 Fed. Cl. 178 (2008)……………..……………………..……………………….……...13, 17

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998)……………..…………………..…………………………....5

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002)………………………………………………………..16

Associated General Contractors v. California State Council of Carpenters,
459 U.S. 519 (1983) ……………...…………………...…………………………….……...5

AT&T v. United States,
307 F.3d 1374 (Fed. Cir. 2002) ……………..…………………..…………….….……...11

Bell Atlantic Corp. v. Twombly,
--- U.S. ----, ----, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)………...............…………….16

Block v. United States,
66 Fed. Cl. 68 (2005)………………...…………………………….....………….….…13, 14

Brehmer v. Federal Aviation Administration,
294 F.3d 1344 (Fed. Cir. 2002)……………..……...……………..……………………...12

Brunetti v. Rubin,
999 F. Supp. 1408 (D. Colo. 1998)……………..……...……………..…………………...5

Carolina Tobacco Co. v. United States,
402 F.3d 1345 (Fed. Cir. 2005) ………..…………………..………………………...11, 12

CC Distributors, Inc. v. United States,
883 F.2d 146 (D.C. Cir. 1989)……………..…………………..………………..…...…...13

CC Distributors, Inc. v. United States,
38 Fed. Cl. 771 (1997)……………..…………………..…………………………..…...5

CEMS, Inc. v. United States,
65 Fed. Cl. 473 (2005)…………………………………………………..…………...17, 18

Comprehensive Health Services, Inc. v. United States,
70 Fed. Cl. 700 (2006) ……………...…………………..……………………………...…...14

Emery Worldwide Airlines, Inc. v. United States,
264 F.3d 1071 (Fed. Cir. 2001)……………………………………………………………..14

FFTF Restoration Co., LLC v. United States,
No. 07-659C, Hr'g Tr. at 7-8 (Feb. 13, 2008) ………………………………………..14

Fire-Trol Holdings, LLC v. United States,
62 Fed. Cl. 440 (2004).……...…………………………………………….……...…18

Freightliner Corp. v. Caldera,
225 F.3d 1361 (Fed. Cir. 2000)………………...…………………………….……...…11

Fullard v. United States,
78 Fed. Cl. 294 (2007)………….……………………………..…………………........15

Future-Tec Management Systems, Inc. v. United States,
No. 00-557C, slip op. at 14 (Fed. Cl. July 3, 2002)………………….………………..14

FW/PBS, Inc. v. Dallas,
493 U.S. 215 (1990)…………..…………………………..…………………………......4

Galen Medical Associates v. United States,
369 F.3d 1324 (Fed. Cir. 2004)…..…………………….………………………....……16

Harlow v. Fitzgerald,
47 U.S. 800 (1982)……………………………………...…………………...………..4

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) …………………………………………..………………...5

Heckler v. Chaney,
470 U.S. 821 (1985).…………………………...…………..…………………………..12

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ………………………….…………………….……...…14

Information Sciences Corp. v. United States,
73 Fed. Cl. 70 (2006) (Info. Scis. I)……………………………….….………………..…2

Information Sciences Corp. v. United States,
75 Fed. Cl. 406 (2007) (Info. Scis. II) ………………….………..…………...….…..………2, 3

Information Sciences Corp. v. United States,
80 Fed. Cl. 759 (2008) (Info. Scis. III) ……………….………..…..……….…....………2, 3

Information Technology & Applications Corp. v. United States,

316 F.3d 1312 (Fed. Cir. 2003)……………………………….…………….…..……...…16

International Management Services, Inc. v. United States,
80 Fed. Cl. 1 (2008)……………………………………...………………………...4, 5

Lavezzo v. United States,
74 Fed. Cl. 502 (Fed. Cl. 2006)………………………………..……………………..…4

Lindsay v. United States,
295 F.3d 1252(Fed. Cir. 2002)………………………………..………………..…..…5

Lion Raisins, Inc. v. United States,
51 Fed. Cl. 238 (2001)……………………………………………………………...18

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 115 (2002)………………………………...…...……………………......14

L.P. Consulting Group, Inc. v. United States,
66 Fed. Cl. 238 (2005) ………………………………...…...…………………..…......16

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) ……………………………………...……………………….......5

M.A. DeAtley Construction, Inc. v. United States,
71 Fed. Cl. 370 (2006)……………………………………………………………...17

Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux,
24 F.3d 1368 (Fed. Cir. 1994) ……………………………………..………………...5

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) ……………………………………..……………...….......4, 5

Myers Investigative and Security Services, Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) ……………………………………..……………….5

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55 (2004).……………………………………...………………………..10

Novell v. United States,
46 Fed. Cl. 601 (2000) ……………………………………..………………………..5

Phillips v. United States,
77 Fed. Cl. 513 (2007)……………………………………………………………...15

Perez v. United States,
156 F.3d 1366 (Fed. Cir. 1998) ……………………………………..…………...….5

Ramcor Services Group, Inc. v. United States,
41 Fed. Cl. 264 (1998), aff'd in part, vacated in part,
185 F.3d 1286 (Fed. Cir. 1999)……………………………………………………………..14

Scheuer v. Rhodes,
416 U.S. 232 (1974)…………………………..…………………………………..……..…4, 5

S.K.J. & Associates v. United States,
67 Fed. Cl. 218 (2005) …………………………..……………………………...…...…14

Southfork Systems, Inc. v. United States,
141 F.3d 1124 (Fed. Cir. 1998).…………….……………….…………………….……..…14

Spezzaferro v. Federal Aviation Administration,
807 F.2d 169 (Fed. Cir. 1986).…………….….……………….………………..……..…16

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984)…………....6

United States. v. Mitchell,
445 U.S. 535 (1980)…………………………………………………………………...18

U.S. Association of Importers of Textiles and Apparel v. United States,
413 F.3d 1344 (Fed. Cir. 2005)…………………………..……………….……….…..…4

Williams v. United States,
71 Fed. Cl. 194 (2006) ……………………………………..………………………..5

Williams v. Secretary of the Navy,
787 F.2d 552, 557-58 (Fed. Cir. 1986)……………………………………………..15

**STATUTES AND REGULATIONS**

5 U.S.C. § 701(a)(2) …………………….……………………….……………..………...…12

5 U.S.C. § 706……………………….………………………….……………..…………...…10, 12

28 U.S.C. § 1491…………………….……………………….……………..…………..…2

28 U.S.C. § 1491(a)(1) ………………….…………………………….………………..…....…1

28 U.S.C. § 1491(b) ………………….………………………….……………..…………..…13

28 U.S.C. § 1491(b)(1) …………………..………………………….…………….…...…passim

28 U.S.C. § 1491(b)(4)……………………………………………………………………...…6, 12

28 U.S.C. § 2412……………………………………………………………………..…..…..…17

28 U.S.C. § 2412(a)(1) ………………………………………………………..…………..….....………17

28 U.S.C. § 2412(d)(1)(A)………………………………………………………...………..………17

28 U.S.C. § 2412(d)(1)(B)……………………………………………………………………….18

FAR 1.102……………………………………………………………………………………....passim

FAR 1.102-2……………………………………………………………...……...………………………...8

FAR 1.102(b)(3)………………...…………………………………………………………..……passim

FAR 1.102-2(c)(1)………………………………………………………..……..……...…...………passim

FAR 15.203(a)…………………………………………………………..……..…………………………...10

FAR 15.304(d)…………………………………………………………..……..…………………………...10

FAR 15.305(a)…………………………………………………………..……..…………………………...10

**LEGISLATIVE HISTORY**

Notice, Federal Acquisition Regulation (FAR) REWRITE,
60 Fed. Reg. 4205 (Jan. 20, 1995) ……….…………...…………………..…..……………9

**SECONDARY SOURCES**

Elissa Bretz, The ABCs of Accountability: Can Federal Contracting Regulations Fix School Privatization?, 36 Public Contract L.J. 667 (2007)..……………….…………..….…..…10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SCIENCES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 08-304 |
| THE UNITED STATES. | ) | (Judge Braden) |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that the Court dismiss the complaint of plaintiff, Information Sciences Corporation ("ISC"), for lack of subject matter jurisdiction. Alternatively, defendant respectfully requests that this Court dismiss ISC's complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.

ISC, an unsuccessful offeror in a General Services Administration ("GSA") procurement, attempts to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1491(b)(1) in order to recover its proposal preparation costs as damages for alleged violations of FAR 1.102(b)(3) and 1.102-2(c)(1). Compl. at ¶¶ 48-55. These FAR sections, however, merely provide guidelines for government officials to use in performing their duties and cannot be violated under 28 U.S.C. § 1491(b)(1). ISC's second cause of action, brought under 28 U.S.C. § 1491(a)(1), alleges that GSA breached an "implied-in-fact contract" to "consider all proposals received in a fair and honest manner." Compl. ¶¶ 56-61. However, ISC's "implied-in-fact contract" theory fails because objections to the procurement process must be based on claims identified in 28 U.S.C. § 1491(b)(1). As demonstrated below, neither cause of action alleged by ISC establishes jurisdiction under the Tucker Act.

Furthermore, ISC bases its claims not upon facts, but upon an unsupported accusation that GSA had already selected Symplicity as the awardee for the contract at the time it issued a solicitation requesting proposals and issued amendments to the solicitation. Compl. ¶ 46. For this reason, ISC's complaint fails to state a claim upon which relief may be granted.

## STATEMENT OF THE ISSUES

1. Whether the Court possesses jurisdiction under the Tucker Act, 28 U.S.C. § 1491(b)(1), to entertain ISC's first claim that GSA violated agency guidelines in FAR 1.102(b)(3) and FAR 1.102-2(c)(1), rather than a mandatory statute or regulation.

2. Whether the Court possesses jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), to entertain ISC's second claim that GSA breached an implied-in-fact contract to consider proposals fairly and honestly.

## STATEMENT OF FACTS

The Court has now before it ISC's third attack on GSA's award of the contract to deliver and operate the Federal Business Opportunities ("FBO") internet-based system. See Info. Scis. Corp. v. United States, 73 Fed. Cl. 70, 114-15 (2006) (ISC I); Info. Scis. Corp. v. United States, 75 Fed. Cl. 406, 413-14 (2007) (ISC II); Info. Scis. Corp. v. United States, 80 Fed Cl. 759 (2008) (ISC III). The complaint sets forth the following factual allegations as the basis for ISC's claims:[1]

On May 18, 2004, GSA published Solicitation TQN-04-RA-0001, a Request for Proposals ("RFP") for the comprehensive redevelopment and management of the FBO electronic

[1] The alleged facts in plaintiff's complaint are assumed to be true only for the purposes of this motion. We reserve the right to challenge the complaint in the event that our motion is not granted or in future filings and arguments in this, or a related, bid protest. In addition, we have included only those alleged facts relevant to our motion to dismiss.

procurement system. Compl. ¶ 7. ISC, as subcontractor for Science Applications International Corporation ("SAIC"), developed and operated the original FBO system. Compl. ¶ 10. GSA amended the solicitation several times during numerous rounds of discussions with offerors, including ISC. Compl. ¶¶ 13-17. Offerors submitted final proposals in February 2005, and GSA awarded the FBO contract to Symplicity in June 2005. Compl. ¶ 17. After a GAO protest by offeror Development Infostructure Inc. ("Devis") and a further amendment of the solicitation, GSA confirmed its award to Symplicity in December 2005. Compl. ¶¶ 17-19.

ISC filed a protest in this Court challenging the award to Symplicity. Compl. ¶ 20. The Court set aside the award and ordered GSA to reconsider its competitive range determination and appoint a new Source Selection Authority ("SSA") to carry out a best value determination using existing technical evaluations of offerors' proposals. Compl. ¶¶ 22, 26; ISC II, 75 Fed. Cl. at 413-14. GSA complied with the Court's direction and again awarded the contract to Symplicity in September 2007. Compl. ¶ 27.

ISC protested the new award to Symplicity, and the Court again set aside the procurement in March 2008. Compl. ¶ 37; ISC III, 80 Fed. Cl. at 800. The Court instructed GSA to revise its solicitation if it intended to proceed with the best value procurement. Id. The existing GSA contract with SAIC/ISC to operate the FBO system was set to expire on March 31, 2008. Therefore, GSA issued a task order to Symplicity under its existing contract with the GSA pursuant to the section 8(a) Streamlined Technology Acquisition Resources for Services ("STARS") Government-Wide Acquisition Contract ("GWAC"). Compl. ¶ 43; Decl. of Robert Abood, ¶¶ 3-4, attached as Ex. 1. The GSA STARS contract is a disadvantaged business set-aside contract designed to promote small business utilization when purchasing technology

solutions for the federal Government.[2]

Although ISC describes itself as a "responsible small business offeror," ISC is not an awardee under the STARS contract. See Decl. of Robert Abood, ¶ 5, attached as Ex. 1.[3] Therefore, ISC was ineligible under the program to receive a task order to deliver and operate a new FBO system.

## ARGUMENT

### I. Standard Of Review

#### A. Standard For Motion To Dismiss Under RCFC 12(b)(1)

Subject matter jurisdiction is a threshold issue. Int'l Mgmt. Servs., Inc. v. United States, 80 Fed. Cl. 1, 4 (2008). The Court must have jurisdiction in order to entertain ISC's Complaint. U.S. Ass'n of Importers of Textiles and Apparel v. United States, 413 F.3d 1344, 1348 (Fed. Cir. 2005). In ruling upon a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), "the Court accepts as true the undisputed allegations in the complaint, and draws all inferences in favor of the plaintiff." Lavezzo v. United States, 74 Fed. Cl. 502, 507 (Fed. Cl. 2006) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 47 U.S. 800 (1982)).

The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Myers Investigative and Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc.

---

[2] The GSA STARS program contract is described at www.gsa.gov/8astars.

[3] A list of GSA STARS program contract holders is also found at http://www.gsa.gov/gsa/cm_attachments/GSA_BASIC/8astars_R2V-v5E_0Z5RDZ-i34K-pR.xls.

v. Dallas, 493 U.S. 215, 231 (1990)); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quoting Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990)). Unless the undisputed facts reveal a basis upon which ISC may prevail, RCFC 12(h)(3) requires the Court to dismiss the matter for want of jurisdiction. Williams v. United States, 71 Fed. Cl. 194, 197 (2006) (citing Scheuer, 416 U.S. at 236); Int'l Mgmt. Servs., 80 Fed. Cl. at 4. "Ambiguities with regard to jurisdiction should be 'resolved against the assumption of jurisdiction.'" Novell v. United States, 46 Fed. Cl. 601, 606 (2000) (quoting Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994)).

If a defendant challenges the jurisdiction of the Court, the plaintiff may not rely merely upon allegations in the complaint, but must instead identify relevant, competent proof to establish jurisdiction. McNutt, 298 U.S. at 189. Indeed, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." CC Distrib., Inc. v. United States, 38 Fed. Cl. 771, 775 (1997).

**B. Standard For Motion To Dismiss Under RCFC 12(b)(6)**

A defendant is entitled to dismissal pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted "when the facts asserted by the claimant do not entitle [it] to a legal remedy . . . accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in the claimant's favor." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Furthermore, a "court may not assume that a plaintiff can prove facts that it has not alleged, or that defendant has violated laws in ways that plaintiff has not alleged." Brunetti v. Rubin, 999 F. Supp. 1408, 1410 (D. Colo. 1998) (citing Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)).

## II. The Court Lacks Jurisdiction To Consider Count I Because The FAR Provisions Allegedly Violated Are Not Mandatory

This Court's bid protest jurisdiction under the Tucker Act is expressly limited in 28 U.S.C. § 1491(b)(1), which provides:

> Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).

The Tucker Act does not create a substantive right of recovery, but simply confers jurisdiction upon the Court when a substantive right exists. United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Furthermore, "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5" of the Administrative Procedures Act ("APA"). 28 U.S.C. § 1491(b)(4).

ISC does not expressly challenge the underlying GSA 8(a) STARS contract or the task order to Symplicity to deliver and operate the FBO system. Therefore, review of the procurement at this stage under the Court's bid protest jurisdiction is necessarily limited to an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Money damages, as in any suit filed under the Court's bid protest jurisdiction, are limited to "bid preparation and proposal costs." 28 U.S.C. § 1491(b)(1).

The "alleged violation of statute or regulation" alleged by ISC in Count I is that that GSA violated FAR 1.102(b)(3) and 1.102-2(c)(1) throughout the four years of the FBO system

procurement. FAR 1.102, however, merely outlines a "guiding principle" for the Federal Acquisition System: that, in the procurement process, agencies will "[c]onduct business with integrity, fairness, and openness." FAR 1.102(b)(3). Similarly, FAR 1.102-2(c)(1) is a "performance standard" calling for "open communication among team members, internal and external customers, and the public." As shown below, FAR 1.102(b)(3) and FAR 1.102-2(c)(1) are simply procurement guidelines that impose no mandatory duty, and therefore, by definition, cannot be "violated."[4]

The FAR's drafters created FAR 1.102 as a "Statement of guiding principles for the federal acquisition system." FAR 1.102 (emphasis added). This section states, in relevant part:

> **1.102 Statement of guiding principles for the federal acquisition system.**
>
> (a) The vision for the Federal Acquisition System is to deliver on a timely basis the best value product or service to the customer, while maintaining the public's trust and fulfilling public policy objectives. Participants in the acquisition process should work together as a team and should be empowered to make decisions within their area of responsibility.
>
> (b) The Federal Acquisition System will—
>
> (1) Satisfy the customer in terms of cost, quality, and timeliness of the delivered product or service by, for example—
>
> (i) Maximizing the use of commercial products and services;
>
> (ii) Using contractors who have a track record of successful past performance or who demonstrate a current superior ability to perform; and
>
> (iii) Promoting competition;

[4] Should the Court conclude that the mere recitation of a regulation in the Complaint is sufficient to confer subject matter jurisdiction under section 1491(b)(1), then Count I should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim for which relief may be granted for identical reasons.

> (2) Minimize administrative operating costs;
>
> (3) Conduct business with integrity, fairness, and openness; and
>
> (4) Fulfill public policy objectives.
>
> * * * * *
>
> (d) The role of each member of the Acquisition Team is to exercise personal initiative and sound business judgment in providing the best value product or service to meet the customer's needs. In exercising initiative, Government members of the Acquisition Team may assume if a specific strategy, practice, policy or procedure is in the best interests of the Government and is not addressed in the FAR, nor prohibited by law (statute or case law), Executive order or other regulation, that the strategy, practice, policy or procedure is a permissible exercise of authority.

FAR 1.102 (emphasis added).

The broad aspirational language of FAR 1.102-2 is similar to that of FAR 1.102. FAR 1.102-2 includes the following "Performance standards" for procuring agencies:

> **1.102-2 Performance standards.**
>
> (a) Satisfy the customer in terms of cost, quality, and timeliness of the delivered product or service.
> . . .
> (b) Minimize administrative operating costs.
> . . .
> (c) Conduct business with integrity, fairness, and openness.
>
> (1) An essential consideration in every aspect of the System is maintaining the public's trust. Not only must the System have integrity, but the actions of each member of the Team must reflect integrity, fairness, and openness. The foundation of integrity within the System is a competent, experienced, and well-trained, professional workforce. Accordingly each member of the Team is responsible and accountable for the wise use of public resources as well as acting in a manner which maintains the public's trust. Fairness and openness require open communication among team members, internal and external customers, and the public.
>
> (2) To achieve efficient operations, the System must shift its focus from "risk avoidance" to one of "risk management." The cost to

> the taxpayer of attempting to eliminate all risk is prohibitive. The Executive Branch will accept and manage the risk associated with empowering local procurement officials to take independent action based on their professional judgment.
>
> (3) The Government shall exercise discretion, use sound business judgment, and comply with applicable laws and regulations in dealing with contractors and prospective contractors. All contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same.
>
> (d) Fulfill public policy objectives. The System must support the attainment of public policy goals adopted by the Congress and the President. In attaining these goals, and in its overall operations, the process shall ensure the efficient use of public resources.

FAR 1.102-2.

These sections were added to the FAR to provide aspirational goals and to assist the FAR's drafters in a revision of substantive FAR sections suggested by the Vice President's September 1993 report of the National Performance Review. The Board of Directors of the FAR Rewrite Project described these two sections as part of "a set of core guiding principles <u>intended as a vision statement</u> for the federal acquisition system" and stated:

> It is intended that the core principles be used in a twofold manner; first, they will be issued in the preface to the FAR not only as a statement of the goals of the system but also to <u>guide future changes to the FAR</u>; and second, they will be used by the drafting teams in the actual rewrite of the FAR.
>
> We encourage agencies to make this statement of core guiding principles available to program customers and contractors, and to make the core principles a part of the <u>basic training materials</u> provided to all personnel involved in the acquisition process.

Notice, Federal Acquisition Regulation (FAR) REWRITE, 60 Fed. Reg. 4205 (Jan. 20, 1995) (emphasis added). For example, FAR drafters incorporated the "goal" in FAR 1.102(b)(3) to "[c]onduct business with integrity, fairness, and openness" through the later sections of the FAR

requiring agencies to set out detailed evaluation criteria and follow these criteria when making an award of a contract. Elissa Bretz, The ABCs of Accountability: Can Federal Contracting Regulations Fix School Privatization?, 36 Public Contract L.J. 667, 678 (2007). Thus, FAR 15.203(a) describes the information that the agency must provide in its request for proposals. FAR 15.203(a)(4) requires that the agency include the "[f]actors and significant subfactors that will be used to evaluate the proposal and their relative importance." FAR 15.304(d) provides that "[a]ll factors and significant subfactors that will affect contract award and their relative importance shall be stated clearly in the solicitation[.] . . . The rating method need not be disclosed in the solicitation. The general approach for evaluating past performance information shall be described." FAR 15.305(a) requires that the "agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."

The aspirational provisions in FAR 1.102 and 1.102-2 impose no clear and mandatory duty upon an agency to take a particular action; therefore, GSA cannot have violated these sections as required to assert jurisdiction under 28 U.S.C. § 1491(b)(1). See, e.g., Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63-64 (2004). As the Supreme Court explained in Norton, the APA permits "[a] claim under § 706(1) [compelling agency action unlawfully withheld] [to] proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Id. at 64 (emphasis in original). In this case, FAR 1.102 provides only "guiding principles" and no "required" action. The narrow waiver of sovereign immunity in the Tucker Act permitting judicial review of an agency procurement allows only a challenge to a "violation of statute or regulation in connection with a procurement

or a proposed procurement"; this cannot be broadened to encompass a "vision statement" or aspirational, open-ended policy statements and agency guidance. 28 U.S.C. § 1491(b)(1).

The United States Court of Appeals for Federal Circuit has emphasized that FAR guidelines providing "only internal government direction" do not create a cause of action if violated by an agency. AT&T v. United States, 307 F.3d 1374, 1379-80 (Fed. Cir. 2002) (holding that FAR regulations concerning the selection of contract type did not create a cause of action if violated); see also Freightliner Corp. v. Caldera, 225 F.3d 1361, 1365 (Fed. Cir. 2000) (finding that a contractor could not bring suit against the Government for violation of a FAR regulation that "serves as an internal operating procedure"). In AT&T, the plaintiff claimed that the Navy violated FAR 35.006(c). This section advises:

> Because the absence of precise specifications and difficulties in estimating costs with accuracy (resulting in a lack of confidence in cost estimates) normally precludes using fixed-price contracting for R&D, the use of cost-reimbursement contracts is usually appropriate [.] . . . When the use of cost and performance incentives is desirable and practicable, fixed-price incentive and cost-plus-incentive-fee contracts should be considered in that order of preference.

FAR 35.006(c).

The Federal Circuit concluded that this regulation was a "cautionary and informative" directive that provided "only internal government direction" and "suppl[ied] no remedy for private parties in a judicial forum." AT&T, 307 F.3d at 1380. This Court should take a similar view of the comparatively weak but equally advisory FAR 1.102(b)(3) and 1.102-2(c)(1).

Similarly, the Federal Circuit has held that a regulation section titled "guidelines" does not impose any "explicit requirement" upon the Government to act in a certain manner. Carolina Tobacco Co. v. United States, 402 F.3d 1345, 1349 (Fed. Cir. 2005) (reviewing 19 C.F.R. §

113.13(b)). In Carolina Tobacco, the court reviewed a Customs regulation titled "Guidelines for determining amount of bond" and concluded that the agency official was not required to follow these "guidelines." The court reasoned that "guidelines" impose no mandatory duties upon agency decisionmakers:

> Guidelines are just that. They provide suggested standards for government officials to use in performing their duties. They do not impose explicit requirements, but merely indicate appropriate courses for the officials to follow.

Id.; see also Brehmer v. Fed. Aviation Admin., 294 F.3d 1344, 1348 (Fed. Cir. 2002) (an agency's "policy" "indicates the standards an agency generally will follow" but "is not . . . a black letter rule that the agency is required to follow").

In sum, the "guiding principles" and "vision" of FAR 1.102 and 1.102-2 "do not impose explicit requirements, but merely indicate appropriate courses for the officials to follow." Carolina Tobacco, 402 F.3d at 1349. Count I therefore fails to allege an actionable "violation of statute or regulation in connection with a procurement or a proposed procurement" and should be dismissed for lack of jurisdiction. 28 U.S.C. § 1491(b)(1).

Lastly, this Court employs the APA's arbitrary and capricious standard in reviewing an agency procurement. 28 U.S.C. § 1491(b)(4). The APA allows judicial review pursuant to 5 U.S.C. § 706 for those adversely affected by agency action except to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). To determine whether an action is committed to agency discretion, courts look to whether the applicable statutes and regulations are "drawn so that a court would have [a] meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830 (1985).

The language of FAR 1.102(b)(3) and FAR 1.102-2(c)(1) provides no substantive

standards by which to assess whether an agency has "[c]onduct[ed] business with integrity, fairness, and openness" or achieved "open communication among team members, internal and external customers, and the public." These determinations are left entirely to the discretion of the agency. Accordingly, FAR 1.102(b)(3) and FAR 1.102-2(c)(1) are unreviewable under the APA. CC Distribs., Inc. v. United States, 883 F.2d 146 (D.C. Cir. 1989).

## III. Section 1491(b)(1) Superseded The Theory Of An "Implied-In-Fact Contract" In The Procurement Process

ISC's remaining claim is that GSA breached an "implied-in-fact contract" with ISC to "consider all proposals received in a fair and honest manner." Compl. ¶¶ 56-61. ISC apparently bases its assertion of jurisdiction upon 28 U.S.C. § 1491(a)(1), which states that the Court has jurisdiction to render judgment on a claim based on any "implied contract" with the United States. However, this theory was superseded by 28 U.S.C. § 1491(b) and no longer provides a source of jurisdiction for the Court over Government procurements.[5]

Before the Administrative Dispute Resolution Act of 1996 ("ADRA") amended the Tucker Act to provide this court with express jurisdiction over bid protests by adding 28 U.S.C. § 1491(b)(2), the Court relied upon the fiction of a "virtual implied contract" with bidders to fairly and honestly consider bids in order to give itself jurisdiction over pre-award bid protests. Block v. United States, 66 Fed. Cl. 68, 77 (2005). Since the passage of ADRA, however, this Court "has repeatedly stated that the implied-in-fact contract to fairly consider bids no longer survives as a basis for recovery in actions challenging consideration of a bid or proposal."

[5] Indeed, decisions following the passage of ADRA that consider claims of jurisdiction over violations of implied contracts under 28 U.S.C. § 1491(a)(1) generally involve alleged oral agreements with agency employees. See, e.g., Abraham v. United States, 81 Fed. Cl. 178, 184-87 (2008).

Block, 66 Fed. Cl. at 76 (citing Lion Raisins, Inc. v. United States, 52 Fed. Cl. 115, 120 (2002); Future-Tec Mgmt. Sys., Inc. v. United States, No. 00-557C, slip op. at 14 (Fed. Cl. July 3, 2002); Ramcor Servs. Group, Inc. v. United States, 41 Fed. Cl. 264, 268 (1998), aff'd in part, vacated in part, 185 F.3d 1286, 1289 (Fed. Cir. 1999)); see also S.K.J. & Assocs. v. United States, 67 Fed. Cl. 218, 225 (2005) ("the implied-in-fact contract theory no longer serves as a basis for recovery for bid protest actions"). The Block court found that "the plaintiff's implied-in-fact contract claim fails because objections to the procurement process must be based on claims identified in the Tucker Act, 28 U.S.C. § 1491(b)(1)."[6] Block, 66 Fed. Cl. at 77. The Court therefore lacks subject matter jurisdiction to consider ISC's claims under an implied-in-fact contract theory. S.K.J. & Assocs., 67 Fed. Cl. 218, 225 (2005); Lion Raisins, 52 Fed. Cl. at 120.

While ISC alleges an "implied-in-fact contract" claim, ISC's complaint is clearly an objection to the GSA's process of considering proposals in response to Solicitation TQN-04-RA-0001 for the FBO system. Judge Firestone has expressed concern with a similar attempt to evade review based solely on the administrative record. FFTF Restoration Co., LLC v. United States, No. 07-659C, Hr'g Tr. at 7-8 (Feb. 13, 2008).

[6] We acknowledge that this Court stated in Comprehensive Health Services, Inc. v. United States, 70 Fed. Cl. 700 (2006), that the Federal Circuit has held that an implied-in-fact contract of good faith and fair dealing may apply to the procurement process. Id. at 737-38, citing Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1078-1082 (Fed. Cir. 2001); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1331-32 (Fed. Cir. 2001); and Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1132 (Fed. Cir. 1998). However, in these decisions, either the Federal Circuit stated it did not reach the issue of whether the implied-in-contract theory survived, Emery, 264 F.3d at 1083 n.9 ("Similar to the Impresa court, 238 F.3d at 1332 n. 6, we decline to address whether implied contract theory survives the ADRA"), and Impresa, 238 F.3d at 1332 n.6 (stating that "we need not decide" whether the implied contract theory survived ADRA); or clearly stated that it was applying pre-ADRA law given that the complaint was filed prior to the amendments. Southfork Sys., 141 F.3d at 1132 n.5.

## IV. ISC Has Also Failed To State A Claim On Which Relief May Be Granted

### A. ISC Grounds Its Claims On Unsupported Allegations Of Bad Faith And Fraud On The Part Of GSA

Each count of ISC's complaint hinges upon speculation that GSA acted in bad faith for four years by misleading ISC into expending resources with full knowledge that it would award the FBO contract to Symplicity. See Compl. at 2 ("It is now obvious that the General Services Administration never had any intention of awarding a contract in response to the competitive solicitation issued four years ago to any other party other than Symplicity thereby creating a costly sham of the entire procurement process."); Compl. ¶ 46 ("It is now evident that GSA, having three times tried to award a contract to Symplicity and having failed to properly do so three times, never intended, with regard to this procurement, to 'conduct business with integrity, fairness, and openness' as required by FAR 1.102."); Compl. ¶¶ 53, 60. Although it carefully avoids using the words "bad faith," ISC states that GSA "never intended" to conduct a fair procurement process and, thus, intentionally conducted a sham procurement. Id. The Court should determine the true nature of the claims from the "substance of the pleadings" and "recharacterize the pleadings accordingly." Williams v. Secretary of the Navy, 787 F.2d 552, 557-58 (Fed. Cir. 1986).

Under RCFC 9(b), a plaintiff must plead "the circumstances constituting fraud . . . with particularity," including "references to time, place, and manner of the fraud." Fullard v. United States, 78 Fed. Cl. 294, 301 (2007). The requirement of pleading fraud with particularity prevents "baseless and irresponsible charges that can damage reputations, and to ensure that the charges are based on reasonable beliefs that wrongs were committed." Phillips v. United States, 77 Fed. Cl. 513, 520 (2007). The plaintiff must provide "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In the present case, ISC fails to meet this burden, since it does not state the time, place, or subject matter of the alleged fraud and has provided only its speculation that "[i]t is now evident" and "[i]t is now obvious" that GSA acted in bad faith. Compl. at 2, ¶ 46. The Court cannot accept claims so blatantly void of any factual support.

It is well-settled that Government contract officials are presumed to exercise their duties in good faith. See Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004); L.P. Consulting Group, Inc. v. United States, 66 Fed. Cl. 238, 243 (2005) (citing Spezzaferro v. Fed. Aviation Admin., 807 F.2d 169, 173 (Fed. Cir. 1986)). The well-known standard for establishing bad faith upon the part of Government employees is "'well-nigh irrefragable proof'" – clear and convincing evidence – which is equated with a specific intent to injure the contractor. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002). In order to overcome the presumption that Government officials acted in good faith, a plaintiff must allege specific acts of bad faith upon the part of the Government. L.P. Consulting, 66 Fed. Cl. at 243 (citing Galen Med. Assocs., 369 F.3d at 1330). Mere allegations of bias cannot suffice for evidence of bad faith. Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1323 (Fed. Cir. 2003) (upholding trial court's refusal to allow discovery regarding alleged bias in absence of record evidence of bias). ISC's allegations here must be dismissed as they are unfounded, unsupported, and, therefore, improper.

**B. ISC Has Failed To Properly Plead Its Implied-In-Fact Contract Claim**

Should the Court determine that ADRA did not supersede the theory of an implied-in-fact contract to honestly and fairly consider proposals, it should nonetheless dismiss ISC's implied-

in-fact contract claim for failure to properly plead the elements of such a contract and fulfill the requirements of RCFC 9(h)(3).

To establish an implied-in-fact contract with the United States, a plaintiff must establish consideration, mutuality of intent, definiteness of terms, and authority of the official whose conduct is relied upon to bind the Government. Abraham, 81 Fed. Cl. at 184. ISC has neither pleaded nor established any of these elements in its complaint. ISC has failed to provide enough facts to state a claim of breach of contract that is plausible on its face and has failed to satisfy the requirement of RCFC 9(h)(3) to provide a "description of the contract . . . sufficient to identify it." Id.

## V. ISC's Claim For Fees Under The Equal Access to Justice Act ("EAJA") Is Premature And Should Be Dismissed

ISC's claim for EAJA fees is premature and should be dismissed. The Court derives its authority to make awards of attorney's fees from the EAJA, 28 U.S.C. § 2412, which provides that in certain circumstances, costs "may be awarded to the prevailing party in any civil action brought by or against the United States. . . ." 28 U.S.C. § 2412(a)(1).[7] ISC, however, is not a prevailing party at this juncture. Therefore, ISC's request to recover attorney's fees is premature and should be dismissed without prejudice. See M.A. DeAtley Constr., Inc. v. United States, 71 Fed. Cl. 370, 371 n.1 (2006). If ISC ultimately prevails upon its claim, the proper method for it to seek to recover its attorney's fees would be to submit an EAJA application, supported by an

[7] EAJA provides for an award of fees and other expenses to a prevailing party only if the court finds that the position taken by the United States was not substantially justified or no special circumstances existed that would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The issue of substantial justification is decided case-by-case upon the basis of the record, and the fact that the United States lost a case does not show that its position was not substantially justified. CEMS, Inc. v. United States, 65 Fed. Cl. 473, 475 (2005).

itemized statement, to the Court within 30 days after the Court's judgment becomes non-appealable. See 28 U.S.C. § 2412(d)(1)(B); see also CEMS, Inc. v. United States, 65 Fed. Cl. 473, 475 (2005).

## VI. ISC's Claim For "Other Monetary Relief" Is Barred By The Tucker Act And Should Be Dismissed

In addition to its bid preparation costs and EAJA fees, ISC seeks "[o]ther monetary and injunctive relief the Court determines is appropriate." Compl. at 19. However, the only monetary relief available under the Court's bid protest jurisdiction is the award of bid preparation and proposal costs. 28 U.S.C. § 1491(b)(2); Lion Raisins, Inc. v. United States, 51 Fed. Cl. 238, 251 (2001). The Tucker Act states that, in protests of an award or a procurement, "monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). The Tucker Act is a waiver of sovereign immunity which must be strictly construed. United States. v. Mitchell, 445 U.S. 535, 538 (1980); Fire-Trol Holdings, LLC v. United States, 62 Fed. Cl. 440, 443-44 (2004).

While ISC has attempted to frame its action as something other than a protest, it has brought Count I pursuant to 28 U.S.C. § 1491(b), and the implied-in-fact contract claim, Count II, has been superseded by this section. Therefore, the Court lacks discretion to award monetary relief other than bid preparation costs in actions brought under the Tucker Act.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court dismiss ISC's complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

GREGG M. SCHWIND
AMANDA L. TANTUM
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Washington D.C. 20530
Tel: (202) 353-2345
Fax: (202) 514-8624

July 23, 2008

Attorneys for Defendant