# In the United States Court of Federal Claims

No. 08-304C
Filed: December 30, 2008
**TO BE PUBLISHED**

```
*****************************************
                                        *    Administrative Dispute Resolution Act
INFORMATION SCIENCES CORP.,             *      of 1996, Pub. L. No. 104-320;
                                        *    Administrative Procedure Act,
          Plaintiff,                    *      5 U.S.C. §§ 701(a)(2), 706;
                                        *    Federal Acquisition Regulation
v.                                      *      1.102(b), (b)(3), 1.108(f), 1.102-2(c)(1),
                                        *      2.101, 15.101, 15.308, 35.006(c), 216.104;
THE UNITED STATES,                      *    Motion to Dismiss, RCFC 12(b)(1),
                                        *      12(b)(6);
          Defendant,                    *    Tucker Act, 28 U.S.C. § 1491(a);
                                        *    19 C.F.R. § 113.13(b).
*****************************************
```

**William A. Shook**, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Washington, D.C., for Plaintiff.

**Gregg M. Schwind**, United States Department of Justice, Washington, D.C., for Defendant.

**MEMORANDUM OPINION AND FINAL ORDER**

**BRADEN,** *Judge.*

I.     **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

This case is related to two prior bid protest cases, in which Information Sciences Corporation ("ISC") contested the Defendant ("Government")'s award of a contract to deliver and operate the FedBizOpps.gov ("FBO") website. *See Info. Scis. Corp.* v. *United States*, 73 Fed. Cl. 70 (2006) ("*ISC I*"); *see also Info. Scis. Corp.* v. *United States*, 80 Fed. Cl. 759 (2008) ("*ISC II*").[1]

The objective of the FBO website was to provide a "single government point-of-entry (GPE) for Federal government procurement opportunities over $25,000" to: "(1) promote the use of cost-effective procedures and processes that employ electronic commerce in the conduct and administration of Federal procurement systems[;] (2) apply nationally and internationally recognized standards that broaden interoperability and ease the electronic interchange of information[;] and (3) allow publication of solicitation notices.)." *ISC I*, 73 Fed. Cl. at 76-77.

---

[1] The facts cited herein were derived from: *ISC I*; *ISC II*; ISC's April 22, 2008 Complaint ("4/22/08 Compl."); and the Government's July 23, 2008 Motion To Dismiss ("Gov't Mot. Dismiss").

On May 18, 2004, the General Services Administration ("GSA") issued a Request for Proposal No. TQN-04-RA-0001 ("the Solicitation") to award a fixed-price incentive contract for the development and management of a new FBO electronic procurement system. *Id*. The Solicitation, as modified by Amendment 0002, provided for a three-year base contract with five one-year options. *Id*. The Solicitation required an offeror be able to deliver a system to meet the following minimum requirements: support two million registered vendors/users; support 1,000 concurrent users; store and archive one million plus total documents per year; process sixty million plus page hits per month; provide live technical and end user support between the hours of 7:00 a.m. to 7:00 p.m. (Eastern Time); and not exceed eight hours per twelve-month period system down time (approximately 99.9% system availability). *Id*.

On June 17, 2005, GSA awarded the contract to the Symplicity Corporation ("Symplicity") and on June 24, 2005, ISC filed a post-award protest at the Government Accounting Office ("GAO"). *Id*. at 88-89. Following a December 7, 2005 GAO ruling requiring a re-evaluation of the award, GSA subsequently upheld the decision to award the FBO contract to Symplicity. *Id*. at 91. On December 22, 2005, ISC filed a Complaint in the United States Court of Federal Claims to protest the award to Symplicity. *Id*. at 92.

On September 19, 2006, the court issued a Memorandum Opinion and Order setting aside that award after determining that GSA violated FAR 15.306(c), because the Contracting Officer ("CO") did not consider price when establishing the competitive range, as required by the Solicitation. *Id*. at 114-16. In addition, the court held that GSA violated FAR 15.308, because the Source Selection Authority ("SSA") failed to exercise independent judgment and properly document the Source Selection Decision. *Id*. at 118-20. The court also held that ISC and a Plaintiff-Intervenor ("DEVIS") were prejudiced, because each firm had a "substantial chance" of being awarded the FBO Contract, but for GSA's errors. *Id*. at 116-18, 121-22. Accordingly, the court ordered GSA to appoint a new SSA to review the prior proposals, pursuant to the terms of the Solicitation and the FAR, and to select an offeror that represents the "best value" to the Government. *Id*. at 129. On September 13, 2007, a new SSA issued a revised Source Selection Decision, and on September 28, 2007, GSA re-awarded the FBO contract to Symplicity. *See ISC II*, 80 Fed. Cl. at 765-66.

On October 24, 2007, ISC filed another Complaint in the United States Court of Federal Claims protesting the September 28, 2007 re-award, alleging that GSA again violated the FAR and/or acted without a rational basis in making the award. *Id*. at 761-62. On October 26, 2007, DEVIS intervened for a second time to challenge that award. *Id*. at 762. On March 18, 2008, the court issued a Memorandum Opinion and Order enjoining the re-award of the FBO contract to Symplicity, after determining that the new SSA violated FAR 15.101 and 15.308, by failing to follow the evaluation factors set forth in the Solicitation. *Id*. at 791-92. Both ISC and DEVIS established prejudice, because each had a "substantial chance" of being awarded the FBO Contract, but for those violations. *Id.* at 793. Accordingly, the court set aside GSA's September 28, 2007 re-award of the FBO contract and ordered GSA to issue a revised Solicitation, if it intended to proceed with procurement, and award the FBO contract as soon as possible. *Id*. at 800.

Instead of issuing a new Solicitation, on March 26, 2008, GSA awarded a sole source contract to Symplicity to take over operation of the FBO system on April 1, 2008. *See* 4/22/08 Compl. ¶ 45; *see also* Gov't Mot. Dismiss Ex. 1 ¶ 4 (Decl. of Robert Abood). The award was made through the

GSA 8(a) Streamlined Technology Acquisition Resources for Services ("STARS"), a vehicle reserved for registered disadvantaged businesses allowing sole source awards of up to $3.5 million in value. *See* 4/22/08 Compl. ¶ 43. The March 26, 2008 STARS contract had a base period of six months and a one-year option, from October 1, 2008 though September 30, 2009. *See* Gov't Mot. Dismiss Ex. 1 ¶ 4 (Decl. of Robert Abood).

On April 22, 2008, ISC filed a third Complaint in the United States Court of Federal Claims, alleging that GSA's March 26, 2008 award violated FAR requirements to conduct business with integrity, fairness, and openness, and breached an implied-in-fact contract with ISC. *See* 4/22/08 Compl. ¶¶ 51, 60. This Complaint does not request that the March 26, 2008 award be set aside, but seeks $1,625,000 in damages for "employee time, labor, material, and expert time involved in pursuing the Solicitation and Amended Solicitation." *Id.* ¶ 62.

On July 23, 2008, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6). On September 2, 2008, ISC filed an Opposition ("Pl. Opp."). On September 22, 2008, the Government filed a Reply (Gov't Reply).

II. DISCUSSION.

A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491. This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

In addition, the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, §§ 12(a), (b), 110 Stat. 3870 (1996), codified at 28 U.S.C. § 1491 (b) ("ADRA"), authorized the United States Court of Federal Claims to "render judgment on an action by an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Banknote Corp. of Am., Inc.* v. *United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("The [United States] Court of Federal Claims has jurisdiction to review both pre-award and post-award bid protests

pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Dispute Resolution Act of 1996[.]").

Count I of the April 22, 2008 Complaint alleges that the court has jurisdiction under 28 U.S.C § 1491(b)(1) to adjudicate the Government's alleged "Breach of Mandatory Requirement to Conduct Business with Integrity, Fairness, and Openness." *See* 4/22/08 Compl. ¶¶ 4, 51 (citing FAR 1.102(b)(3), FAR 1.102-2(c)(1)). Count II of the April 22, 2008 Complaint also alleges that the court has jurisdiction under 28 U.S.C § 1491(a)(1) to adjudicate the Government's alleged "Breach of Implied-In-Fact Contract." *See* 4/22/08 Compl. ¶¶ 4, 56.

### B. Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Specifically, to establish standing, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

The April 22, 2008 Complaint alleges a concrete and particularized injury, as Plaintiff has suffered damages of $1.625 million in preparing for the procurement, submitting an initial proposal, submitting revised proposals, and participating in numerous required procurement activities. *See* 4/22/08 Compl. ¶¶ 55, 61. Accordingly, Plaintiff has standing, because these alleged monetary damages establish Plaintiff's "injury in fact" that is "traceable to the challenged action of the defendant" and can be redressed by a decision of this court. *See Lujan*, 504 U.S. at 560-61.

### C. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

**D.     Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).**

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted).  In order to survive a motion to dismiss, however, the court "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.*; *see also* RCFC 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).

**III.   THE RESOLUTION OF THE GOVERNMENT'S MOTION TO DISMISS, PURSUANT TO RCFC 12(b)(1).**

**A.     Regarding Count I – Alleged Violations Of FAR 1.102 and FAR 1.102-2.**

Count I of the April 22, 2008 Complaint first alleges that the Government "is required to '[c]onduct business with integrity, fairness, and openness' (FAR 1.102(b)(3)),[2] which requires 'open

---

[2] FAR Section 1.102, Subsection B, titled "Statement Of Guiding Principles For The Federal Acquisition System," provides:

The Federal Acquisition System will--

   (1) Satisfy the customer in terms of cost, quality, and timeliness of the delivered product or service by, for example--

      (i) Maximizing the use of commercial products and services;

      (ii) Using contractors who have a track record of successful past performance or who demonstrate a current superior ability to perform; and

      (iii) Promoting competition;

   (2) Minimize administrative operating costs;

   (3) Conduct business with integrity, fairness, and openness; and

communication among team members, internal and external customers, and the public' (FAR 1.102-2(c)(1))." [3]  *See* 4/22/08 Compl. ¶ 51.  Second, Count I alleges that the Government violated "its duty . . . to consider [ISC's] proposal fairly and honestly and not in an arbitrary and capricious manner[.]"  *Id*. ¶ 52.  Third, Count I alleges that the Government "failed again in its duty when . . [it] chose . . . to utilize a sole source contract vehicle to award the contract[.]"  *Id*. ¶ 53.

### 1. The Government's Argument.

First, the Government argues that Section 1491(b) of the Tucker Act limits any monetary relief "to solely bid preparation and proposal costs."  *See* Gov't Mot. Dismiss at 6.  Because ISC does not challenge the actual of the STARS contract to Symplicity, the court's jurisdiction is limited to an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  *Id*. (quoting 28 U.S.C. § 1491(b)(1)).  Despite ISC's contrary assertions, neither FAR 1.102(b)(3) nor FAR 1.102-2(c)(1), are money mandating.  *Id*. at 6-7.  FAR 1.102(b)(3) outlines "guiding principles" for the Federal Acquisition System.  *Id*. at 7.  FAR 1.102-2(c)(1) sets forth "performance standards."  *Id*.  These FAR provisions provide only implementing guidance, *i.e.*, "a set of core guiding principles intended as a vision statement for the federal acquisition system."  *Id*. at 9 (quoting Notices, Federal Acquisition Regulation (FAR) REWRITE, 60 FR 4205, 1995 WL 18660 (Jan. 20 1995)).

Since FAR 1.102(b)(3) and 1.102-2(c)(1) do not impose any substantive legal obligations on the Government, judicial review under Administrative Procedure Act, 5 U.S.C. § 706 ("APA") is not required, because this is not a situation where "an agency failed to take a discrete agency action that it is *required to take*."  *Id*. at 10 (quoting *Norton* v. *Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)) (emphasis added).  As a matter of law, the Tucker Act recognizes only waiver of sovereign immunity for a "violation of statue or regulation," not FAR guidelines.  *Id*. at 10-11.  For this reason, the United States Court of Appeals for the Federal Circuit has held that the FAR guidelines provide "only internal government direction" and do not expand the congressionally authorized Tucker Act

---

(4) Fulfill public policy objectives.

48 C.F.R. § 1.102(b).

[3] FAR Section 1.102-2, Subsection C(1), titled "Performance Standards," provides:

An essential consideration in every aspect of the System is maintaining the public's trust. Not only must the System have integrity, but the actions of each member of the Team must reflect integrity, fairness, and openness. The foundation of integrity within the System is a competent, experienced, and well-trained, professional workforce. Accordingly each member of the Team is responsible and accountable for the wise use of public resources as well as acting in a manner which maintains the public's trust. Fairness and openness require open communication among team members, internal and external customers, and the public.

48 C.F.R. § 1.102-2(c)(1).

jurisdiction. *Id*. at 11 (quoting *Am. Tel. & Type* v. *United States*, 307 F.3d 1374, 1380 (Fed. Cir. 2002) ("*AT&T*")); *see also Carolina Tobacco Co.* v. *United States*, 402 F.3d 1345, 1349 (Fed. Cir. 2005) ("*Carolina Tobacco*") ("Guidelines . . . [do not impose any] explicit [legal] requirement" on the Government). Therefore, the FAR provisions at issue are not enforceable. *See* Gov't Mot. Dismiss at 11.

The Government admits that the APA authorizes judicial review of administrative action, but only when "agency action is committed to agency discretion by law." *Id*. (quoting 5 U.S.C. § 701(a)(2)); *see also Heckler* v. *Chaney*, 470 U.S. 821, 830 (1985) ("We of course only list the above concerns to facilitate understanding of our conclusion that an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2). For good reasons, such a decision has traditionally been 'committed to agency discretion,' and we believe that the Congress enacting the APA did not intend to alter that tradition.").

### 2. The Plaintiff's Response.

ISC responds that the text of FAR 1.102(b)(3) and FAR 1.102-2(c)(1) contain clear, compulsory language, *i.e.*, "[t]he Federal Acquisition System *will.*" *See* Pl. Resp. at 15 (quoting 48 C.F.R. § 1.102(b)). Therefore, the United States Court of Federal Claims has held that FAR 1.102(b)(3) "*requires* 'integrity, fairness and openness' in procurements conducted under the Federal Acquisition System." *Id*. (emphasis added) (quoting *Dynacs Eng'g Co.,* v. *United States*, 48 Fed. Cl. 124, 131 (2000) (referencing 48 C.F.R. § 1.102(b)(3))).

Likewise, FAR 1.102-2(c) also utilizes mandating language, requiring that "the [Government's Procurement] Team *must* reflect integrity, fairness, and openness." *Id*. (quoting 48 C.F.R. § 1.102-2(c)(1)) (emphasis added). "Must" means "the imperative." *Id*. at 16-17 (quoting 48 C.F.R. § 2.101). Imperative words mandate agency action, *e.g.*, "the contracting officer *is responsible* for the action, unless another party is expressly cited." *Id*. at 17 (emphasis added) (quoting 48 C.F.R. § 1.108(f)).

### 3. The Government's Reply.

The Government replies that since the language of both regulations at issue explains their purpose; they are not a mandate. *Id*. Moreover, no court has concluded that a violation of FAR 1.102(b)(3) or 1.102-2(c)(1) creates a right of action. *Id*. at 6. If the court determines that either or both of these provisions are mandatory, as a matter of law, such a ruling would create a right of action, exceeding the court's authority. *Id*.

### 4. The Court's Resolution.

Count I alleges that the Government violated FAR 1.102(b)(3) and 1.102-2(c)(1) by awarding the FBO procurement to Symplicity. *See* 4/22/08 Compl. ¶¶ 48-55. The United States Court of Appeals for the Federal Circuit, however, has issued a ruling governing the disposition of Count I.

In *Carolina Tobacco*, the issue was whether the title to 19 C.F.R. § 113.13(b),[4] "Guidelines for determining amount of bond," imposed a substantive legal obligation on the Government. *See Carolina Tobacco*, 402 F.3d at 1346. Our appellate court held that:

> Guidelines are just that. They provide suggested standards for government officials to use in performing their duties. They do not impose explicit requirements, but merely indicate appropriate courses for the officials to follow.

*Id*. at 1349 (citing *Farrell* v. *Dep't of Interior*, 314 F.3d 584, 591-92 (Fed. Cir. 2002) ("In this case, the document is called a 'Guide' . . . [i]t contains no mandatory language . . . [t]he [Government] w[as] not bound by the Table.")); *see also Weston* v. *United States Dep't of Housing & Urban Dev.*, 724 F.2d 943, 950 (Fed. Cir. 1983) ("It is clear, therefore, that the penalties set forth in the guide are not inflexible outer limits.").

FAR 1.102 is titled: "Statement of guiding principles for the federal acquisition system." 48 C.F.R. 1.102. Therefore, FAR 1.102, like 19 C.F.R. § 113.13(b), does not "impose explicit requirements, but merely indicates appropriate courses for [agency] officials to follow." *Carolina Tobacco Co.,* 402 F.3d at 1349. It is true that FAR 1.102(b)(3) states that the Government should

---

[4] Title 19, Section 113.13(b), of the Code of Federal Regulations provides:

Guidelines for determining amount of bond. In determining whether the amount of a bond is sufficient, the port director or drawback office in the case of a bond relating to repayment of erroneous drawback payment (see § 113.11) should at least consider:

(1) The prior record of the principal in timely payment of duties, taxes, and charges with respect to the transaction(s) involving such payments;

(2) The prior record of the principal in complying with Customs demands for redelivery, the obligation to hold unexamined merchandise intact, and other requirements relating to enforcement and administration of Customs and other laws and regulations;

(3) The value and nature of the merchandise involved in the transaction(s) to be secured;

(4) The degree and type of supervision that Customs will exercise over the transaction(s);

(5) The prior record of the principal in honoring bond commitments, including the payment of liquidated damages; and

(6) Any additional information contained in any application for a bond.

19 C.F.R. 113.13(b)

"[c]onduct business with integrity, fairness, and openness" and that "the Federal Acquisition System will . . . [s]atisfy the customer in terms of cost, quality, and timeliness" and "[m]inimize administrative operating costs."  48 C.F.R. § 1.102(b)(3).  This text, however, imposes no specific substantive obligations on the Government, and therefore is not judicially enforceable.  *Id*.

The United States Court of Appeals for the Federal Circuit's decision in *AT&T* is also particularly instructive.  The issue in *AT&T* was whether the violation of two separate sections of the FAR, detailing a contracting officer's authority to award a fixed-price contract in situations where cost overruns are likely, created a basis for jurisdiction under 28 U.S.C. § 1491(b).  *See AT&T*, 307 F.3d at 1379-80.  The first regulation, FAR 216.104, lists a number of factors for the contracting officer to consider in deciding the type of contract to award in Department of Defense research and development procurements, such as "stability of design," "research and development," or "advanced development."  48 C.F.R. § 216.104.  The second, FAR 35.006(c), states that when awarding research and development contracts, fixed-price contracts normally should be "preclude[d]," however, "[w]hen the use of cost and performance incentive is desirable and practicable, fixed-price incentive and cost-incentive-fee contracts should be considered in that order preference."  48 C.F.R. § 35.006(c).  Neither of these provisions, however, imposed any mandatory, judicially enforceable requirements, but instead provided  "internal government direction."  *AT&T*, 307 F.3d at 1379.

Likewise, FAR 1.102-2(c)(1) also provides "internal government direction," *i.e.*, "each member of the Team is responsible and accountable for the wise use of public resources as well as acting in a manner which maintains the public's trust . . . [f]airness and openness require open communication among team members, internal and external customers, and the public."  48 C.F.R. § 1.102-2(c)(1).  But FAR 1.102-2(c)(1) does not impose a specific, substantive obligation on the Government.  *See AT&T*, 307 F.3d at 1380.

The history of FAR 1.102(b)(3) and 1.102-2(c)(1) further supports the view that neither provision imposes judicially enforceable obligations.  Both sections originally were drafted to serve as a preface to the substantive sections of the FAR.  *See* FAR REWRITE, 60 FR at 4206.  These sections were characterized as a "vision statement for the federal acquisition system" that operated as "a statement of goals of the system but also to guide future changes to the FAR."  *Id*. at 4205-06.  Subsequently, this preface was incorporated in the text of the first section of the FAR.  *See* Notices, Federal Acquisition Regulation (FAR) REWRITE, 60 FR 34732, 1995 WL 387043 (July 3, 1995).  The export of this language from the preface to the text, however, is not sufficient to transform this "vision statement" into a substantive requirement.  *See Keene Corp*. v. *United States*, 508 U.S. 200, 209 (1993) ("[W]e do not presume the revision involved a change in the underlying substantive law 'unless an intent to make such [a] chang[e] is clearly expressed.'") (*quoting Fourco Glass Co*. v. *Transmirra Products Corp*., 353 U.S. 222, 227 (1957)).

Therefore, for the foregoing reasons, the court has determined that Count I of the April 22, 2008 Complaint must be dismissed for lack of subject matter jurisdiction.  *See* RCFC 12(b)(1).

### B.      Regarding Count II – Allegations Of Breach Of Implied-In-Fact Contract.

Count II of the April 22, 2008 Complaint alleges that GSA "breached its implied-in-fact contract with Plaintiff" by encouraging ISC to submit proposals, while at the same time, awarding a sole source contract to Symplicity.  *See* 4/22/08 Compl. ¶ 60.

#### 1.      The Government's Argument.

The Government argues that ISC's reliance on 28 U.S.C. § 1491(a)(1),[5] authorizing the United States Court of Federal Claims to adjudicate claims "founded either upon . . . any express or *implied* contract with the United States" is misplaced.  *See* Gov't Mot. Dismiss at 13.  The court's jurisdiction over implied-in-fact contracts in bid protest cases, based on 28 U.S.C. § 1491(a)(1), was superceded when the Tucker Act was amended by the Administrative Dispute Resolution Act of 1996 ("ADRA") to expressly authorize jurisdiction over bid protests.  *See* 28 U.S.C. § 1491(b)(1).[6]  *Id*.  Therefore, the United States Court of Federal Claims "repeatedly [has] stated that the implied-in-fact contract to fairly consider bids no longer survives as a basis for recovery in actions challenging consideration of a bid or proposal."  *Id*.

---

[5] Section 1491(a)(1) of Title 28 of the United States Code provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 U.S.C. § 1491(a)(1).

[6] Section 1491(b)(1) of Title 28 of the United States Code provides:

(1) Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).

### 2.      The Plaintiff's Response.

ISC responds that the court and its predecessor have a long history of recognizing that, when the Government enters into the commercial marketplace to purchase goods or services, an implied-in-fact contract can be created. *Id*. Accordingly, this court held in *ISC I* and *ISC II* that the Government violated mandatory provisions of procurement law in failing to "fairly and honestly" evaluate the ISC proposal. *See* Pl. Resp. at 21. Nevertheless, after the court's decision in *ISC II*, the Government scraped all the previous work on the FBO procurement and decided to award the contract to Symplicity using a completely different procurement vehicle. *See* Pl. Resp. at 21. This is a violation of the "requirements of fair consideration," and gives rise to a cause of action under an implied-in-fact contract theory. *Id*.

Nothing in the plain language of the ADRA supports the Government's argument that the court's implied-in-fact contract jurisdiction in bid protests was superceded by the ADRA. *Id*. at 25. Instead, the legislative history of the ADRA supports the view that this Act did not supplant the court's implied-in-fact contract jurisdiction, because Congress's sole concern was ending the conflicting jurisprudence arising from the dual jurisdiction of the United States District Courts and the United States Court of Federal Claims over bid protests. *Id*. at 26-30.

### 3.      The Government's Reply.

The separation of powers doctrine "creates a presumption that legislation preempts the role of federal judges in developing and applying federal common law." Gov't Reply at 7 (quoting *In re Oswego Barge Corp.,* 664 F.2d 327, 339 (2d Cir. 1981)). The ADRA was enacted to place all bid protests in one federal court, thereby superceding any common law jurisdiction. *Id*. at 10. Therefore, to allow ISC to precede with an implied-in-fact claim violates separation of powers and ignores congressional intent in enacting the ADRA. *Id*. at 11. Even though the ADRA does not specifically address whether the implied-in-fact contract doctrine retains viability, when Congress speaks directly on a question previously addressed by federal common law, it need not "affirmatively proscribe the use of federal common law." *Id*. at 12 (quoting *City of Milwaukee* v. *Illinois*, 451 U.S. 304, 315 (1981)).

### 4.      The Court's Resolution.

Prior to the enactment of the ADRA in 1996, the United States Court of Federal Claims reviewed bid protests based on an implied-in-fact contract theory.[7] *See Southfolk Sys., Inc.* v. *United States*, 141 F.3d 1124, 1132 (Fed. Cir. 1998) (Under the Tucker Act, "[t]he jurisdictional basis [for bid protests] is the alleged breach of 'an implied contract to have the involved bids fairly and honestly considered.'") (quoting *United States* v. *John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed. Cir. 1983) (*en banc*). The ADRA, however, remedied this situation by explicitly providing that a protester had

---

[7] The Section 800 Panel Report, relied on by Congress in drafting the ADRA, found that United States Court of Federal Claims was "severely limited by the need to find that the Government breached [an] implied contract [to resolve bid protests]." *Id*. at 14 (quoting Section 800 Panel Report, 140 CONG. REC. S12369-03, 1994 WL 456698 (Aug. 23, 1994)).

an independent cause of action to "object[] to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). Subsequently, the judges of the United States Court of Federal Claims have differed on the issue of whether the implied-in-fact contract doctrine, as it relates to bid protests, survived enactment of the ADRA.[8] On two occasions, the United State Court of Appeals for the Federal Circuit

---

[8] *Compare Biltmore Forest Broad. FM, Inc.* v. *United States*, 80 Fed. Cl. 322, 334 (2008) (Merow, J.) ("With the enactment of ADRA, it was no longer necessary for an unsuccessful bidder to base the court's protest jurisdiction on a breach of an implied contract to consider bids fairly[.]"); *Block* v. *United States*, 66 Fed. Cl. 68, 77 (2005) (Firestone, J.) ("The plaintiff's theory of an implied-in-fact contract to fairly and honestly consider his proposal no longer gives rise to a potential claim."); *Lion Raisins, Inc.* v. *United States*, 52 Fed. Cl. 115, 120 (2002) (C. Miller, J.) ("[N]o logical reason would support the presumption that Congress intended for the implied-contract cause of action to survive the enactment of the ADRA."); *with Hamilton Sundstrand Power Sys.*, 75 Fed. Cl. 512, 516 (2007) (Bruggink, J.) ("[W]e have previously held that, even though bid protest jurisdiction in this court is no longer premised on a theory of an implied-in-fact contract, it is still recognized that the issuance of a competitive solicitation which generates responsive offers gives rise to an implied contract of fair dealing.") (citation and internal quotation omitted); *L-3 Commc'ns Intergrated Sys., L.P.* v. *United States*, 79 Fed. Cl. at 453, 461-62 (2007) (Williams, J.) ("Although ADRA obviated the need to base the [United States Court of Federal Claims'] protest jurisdiction on a breach of this implied-in-fact contract to consider bids fairly, the statute in no way eliminated a protestor's ability to challenge arbitrary and capricious conduct, such as bias or an unfair evaluation, which would also constitute a breach of the implied contract of fair dealing."); *Hunt Bldg., Co.* v. *United States*, 61 Fed. Cl. 243, 273(2004) (Williams, J.) ("This Court's bid protest jurisdiction is no longer premised on the theory of the breach of an implied-in-fact contract. Nonetheless, it has long been held and is still recognized that the issuance of a competitive solicitation which generates responsive offers gives rise to an implied contract of fair dealing."); *Phoenix Air Group* v. *United States*, 46 Fed. Cl. 90, 100 (2000) (Horn, J.) ("The United States Court of Appeals for the Federal Circuit has stated that the Tucker Act's grant of jurisdiction extends to . . . bid protests, challenging the proposed award of contracts based on alleged improprieties in the procurement process. In such cases, jurisdiction is based upon an alleged breach of an implied contract to have the involved bids fairly and honestly considered.") (citations and internal quotations omitted); *Unified Architecture & Eng'g, Inc.* v. *United States*, 46 Fed. Cl. 56, 60-61 (2000) (Tidwell III, J.) ("Although in many cases the ADRA amendments obviate the need to frame a bid protest claim as a breach of implied-in-fact contract claim, the amendments do not supercede the implied contract theory of good faith and honest consideration as defendant contends."); *Forestry Surveys & Data* v. *United States*, 44 Fed. Cl 485, 491 (1999) (Gibson, J.) ("Under our bid protest jurisdiction, the court hears challenges brought by disappointed bidders for proposed government contracts alleging impropriety in the procurement process. Jurisdiction in such cases is premised on the existence of an implied-in-fact contract between the government and the bidder to 'fairly and honestly' consider all bids.") (citations omitted); *Aero Corp.* v. *United States*, 38 Fed. Cl. 739, 748 (1997) (Futey, J.) ("Whenever defendant solicits bids, an implied-in-fact contract is created between defendant and the bidders on the underlying contract . . . It is this implied contract which forms the

has declined to resolve these different perspectives. *See Emory Worldwide Airlines, Inc.* v. *United States*, 264 F.3d 1071, 1082 n. 9 (Fed. Cir. 2001) ("[W]e decline to address whether the implied contract theory survives the ADRA."); *see also Impresa Construzioni Geom. Domenico Garufi* v. *United States,* 238 F.3d 1324, 1332 n.6 (Fed. Cir. 2001) ("Although it has been argued that the implied contract theory survives the 1996 amendment [of the ADRA] . . . we need not decide this issue.") (citation omitted).

The ADRA did not make any changes to 28 U.SC. § 1491(a)(1), the foundational jurisdictional statute for the United States Court of Federal Claims. Nothing in the text of the ADRA explicitly states whether the implied-in-fact contract doctrine survives the bill's enactment. *See* Administrative Dispute Resolution Act of 1996, PL 104-320, § 12, 110 Stat. 3870 (1996). Prior to the enactment of the ADRA, however, the court evaluated the Government's conduct in a bid protest under a "fairly and honestly considered" standard. *See e.g., Heyer Prods. Co.* v. *United States*, 140 F.Supp. 409, 412 (Ct. Cl. 1956); *see also Southfolk Sys.*, 141 F.3d at 1132. Under the ADRA, Congress required that the Government's conduct must exclusively be reviewed under the APA's "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard. *See* 28 U.S.C 1491(b)(4). Therefore, if 28 U.S.C. § 1491(a)(1) reserved the right to bring a protest under an implied-in-fact doctrine, that claim would be evaluated under a different standard than a claim brought under the express bid protest jurisdiction of 28 U.S.C. § 1491(b). The legislative history suggests that one of the goals of the ADRA was to eliminate this very situation.[9]

In this case, the April 22, 2008 Complaint invokes both standards of review. Count I asserts bid protest jurisdiction of 28 U.S.C. 1491(b)(1) and APA review, while Count II alleges the 28 U.S.C. 1491(a)(1) "fairly and honestly considered" standard. *Compare* 4/22/08 Compl. ¶¶ 48-55 *with* ¶¶ 56-61. In other cases, where a plaintiff has alleged both of these claims, the court has dismissed claims based on an implied-in-fact contract theory. *See S.K.J. & Assocs, Inc.* v. *United States*, 67 Fed. Cl. 218, 225 (2005) ("[T]his court agrees with the *Lion Raisins* that the implied-in-fact contract theory no longer serves as a basis of recovery for bid protest actions"); *see also Lion Raisins,* 52 Fed. Cl. at 120 ("Because there is no benefit in bringing a bid protest claim as a an implied contract under section 1491(a)(1), no logical reason would support the presumption that Congress intended for the implied-contract cause of action to survive the enactment of the ADRA.").

The court has determined that the more persuasive view is that the ADRA divested the court of jurisdiction over common law claims in bid protest cases. *See United States* v. *Connolly*, 716 F.2d

---

jurisdictional basis for an exercise of this court's equitable authority.") (citations and internal quotations omitted)).

[9] As Senator Cohen stated in the Senate debate, the goal of the ADRA was to "develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum." 142 CONG. REC. S6155-01, 1996 WL 315422 (June 12, 1996). In addition, Andrew Fois, Assistant Attorney General, Office of Legislative Affairs, United States Department of Justice, sent a letter to Congress requesting legislation that will "impose a similar, if not identical, standard" across all federal judicial fora. *Id*. Section 1491(b)(4) addressed this concern by mandating the use of APA Section 706 review.

882, 885 (Fed. Cir. 1983) (*en banc*), *cert. denied*, 465 U.S. 1065 (1984) ("It is now settled that the Tucker Act does not itself confer a substantive right of recovery; rather, the prospective claimant must invoke *substantive rights grounded expressly* or by implication in a contract, an act of Congress or a regulation of an executive department.") (emphasis added). Accordingly, in this case, the court has determined that Count II of the April 22, 2008 Complaint also must be dismissed for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

**IV. THE RESOLUTION OF THE GOVERNMENT'S MOTION TO DISMISS, PURSUANT TO RCFC 12(b)(6).**

Given that both counts of the April 22, 2008 Complaint have been dismissed for lack of subject matter jurisdiction, the court need not address the merits of the Government's alternative argument regarding ISC's failure to state a claim under RCFC 12(b)(6). *See* Gov't Mot. Dismiss at 15-17.

**V. CONCLUSION.**

For these reasons, the Government's July 23, 2008 Motion To Dismiss is granted and Plaintiff's April 22, 2008 Complaint is dismissed, without prejudice. Plaintiff, however, may file a proper application for bid proposal and proposal costs, pursuant to 28 U.S.C. § 1491(b)(2), in connection with the Government's June 17, 2005 and September 28, 2007 awards. *See ISC I*, 73 Fed. Cl. at 76-77; *see also ISC II*, 80 Fed. Cl. at 765-66.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**